## THE TRANSFER NO. 18.

(Circuit Court of Appeals, Second Circuit. May 24, 1911.)

No. 283.

COLLISION (§ 95*)—TUGS WITH TOWS—FAULT OF TUGS.

A transfer tug which moved out of her slip on the New Jersey side of North river with a car float on her side and a tug with a tow passing up the river both held in fault for a collision between their tows, the transfer for coming out without sounding the slip whistle required by article 18, rule 5, of the inland rules (30 Stat. 100 [U. S. Comp. St. 1901, p. 2882]), when she was ready to come out, and the other tug for failing to keep a proper lookout which might have avoided a collision.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 95.*

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Lehigh Valley Transportation Company against the steam tug Transfer No. 18, the New York, New Haven & Hartford Railroad Company, claimant. Decree holding two tugs liable for collision between their tows, and libelant appeals. Affirmed.

Charles M. Sheafe, Jr. (J. T. Kilbreth, of counsel), for appellant.

Harrington, Bigham & Englar (Howard S. Harrington and D. R. Englar, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

PER CURIAM. The collision happened at night in the North River near the Jersey shore off Communipaw ferry. We concur with the District Judge. Article 18, rule 5, of the inland rules provides that steam vessels, shall give the long blast "bend" or "slip" whistle signal "when (they) are moved from their docks or berths." Conceding that Transfer No. 18 did give one long whistle, and there is a conflict of testimony as to that, she gave it, not when she moved from her dock, but some time before she moved. How long that time was it is difficult to determine. Certainly she waited till the tug W. V. R. Smith had moved out of her way, and, when she gave it, the Superior and her tow were still so far away that the master of Transfer No. 18 could not make out what they were. We cannot find that, had she repeated her signal when the Smith had got out of the way and she herself was about to move from the dock, it would not have challenged the attention of the lookouts on the flotilla, and the collision would not have been avoided.

It is also manifest that, when the Transfer began to move from the dock, the Superior was still below her. Had she been merely past the dock at that time, she would have been safely beyond it before the Transfer could have backed out and made the turn she did before collision. Had the lookouts been attentive, they would have seen the Transfer backing out towards their own course, and it seems reasonable to con-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

clude that the master of the Superior thus warned of the Transfer's approach could have avoided the collision.

The decree is affirmed, with interest and costs.